Subject to Motion Under Seal

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Maria Reddick
4012 14th St NW
Washington, DC 20011
Phone: (202) 497-2611

Plaintiff, Pro Se

CIVIL ACTION NO.:

v.

Congressman John Conyers, Jr.
2426 Rayburn House Office Building
Washington, DC 20515

Date Action filed:

Defendant

and

Raymond Plowden, Chief of Staff
2426 Rayburn House Office Building
Washington, DC 20515

Defendant

and

Yolonda Lipsey, District Director
669 Federal Building
231 W. Lafayette
Detroit, MI 48226

Defendant

## COMPLAINT
(Sexual Harassment, Retaliation and Hostile Work Environment in federal service and Constructive Discharge)

## I. INTRODUCTION

1. Plaintiff Maria Reddick, proceeding Pro Se, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 29 C.F.R. § 1604.11(f), House Rule 23 and The Congressional Accountability Act clause 2 U.S.C. § 1311 to remedy acts of sexual harassment

RECEIVED
FEB 28 2017
Clerk, U.S. District and

and a hostile work environment perpetrated against her by the Office of John Conyers, Jr.

Plaintiff asserts that not long after her hiring, Defendant John Conyers, Jr began to make sexual advances in the form of inappropriate comments and touches. These behaviors and actions were so common and pervasive that they created a hostile work environment. Plaintiff further asserts that management failed to provide reasonable accommodation and protections and retaliated against her for having sought relief for the unlawful harassment, and thereby, created a work environment so hostile in violation of Section 201 and 207 of the Congressional Accountability Act, 2 U.S.C. §1311, et seq. the Congressional Accountability Act, 2 U.S.C. § 1317(a) that the Defendants' collective actions caused her to suffer physical, emotional and mental ailments resulting in her constructive discharge.

## II. JURISDICTION,

2. The jurisdiction of this court is founded in 28 U.S.C. § 1331 which states district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States and this court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 29 C.F.R. § 1604.11(f), House Rule 23 and The Congressional Accountability Act clause 2 U.S.C. § 1311.

3. Additionally, in accordance with section 408 of the Congressional Accountability Act ("CAA"), Plaintiff can file a civil action in the United States District Court, after 30 days but no later than 90 days, after the end of Mediation, the expiration of the time to file was extended until February 28, 2017 by mutual agreement of the parties.

## III. VENUE

4. Venue is proper in this District under 28 U.S.C. § 1391(b) (1)(2) as the Plaintiff is a resident of the District of Columbia and a former employee of the U. S. House of

Representatives located in the District of Columbia. The Defendants are all employees of the Office of John Conyers, U. S. House of Representatives located in the District of Columbia and many of the events giving rise to this complaint took place in the District of Columbia, United States.

## IV. PARTIES

5.  Plaintiff, Maria D. Reddick, is an unmarried black woman, is a citizen of the United States and a resident of the District of Columbia.  At all times relevant to this suit, Plaintiff was employed by the Office of John Conyers Jr and the U.S. House of Representatives.

6. Defendant John Conyers, Jr. is a Member of Congress in the U.S. House of Representatives and is married to Monica Ann Conyers.

7. Defendant Ray Plowden is the Chief of Staff in the Office of John Conyers Jr and an employee of the U.S. House of Representatives.

8. Defendant Yolonda Lipsey is the District Director in the Office of John Conyers Jr and an employee of the U.S. House of Representatives.

9. Defendants' Plowden and Lipsey are part of the management staff for the Office of John Conyers Jr, and supervised the Plaintiff in different capacities.  Both are subordinate to Defendant Conyers, a Member of Congress.

## V. STATEMENT OF FACTS

10. The Plaintiff has known Defendant Congressman John Conyers and Defendant Ray Plowden since 2006 and first worked for Defendant Conyers in his DC campaign offices. The Plaintiff was also previously employed by the House Committee on the Judiciary as Staff Assistant at the behest of Defendant Conyers from 1997 to 1998. The Plaintiff has always stayed in touch with the Congressman and the offices of Defendant Conyers performing personal and

other tasks, i.e. babysitting or locating babysitters for Defendant Conyers' young children and periodically from 2007 to 2012, would travel with Defendant Conyers for campaign events around the country. At no point during these periods or events did Defendant Conyers make any inappropriate advances or touch the plaintiff inappropriately.

11. On July 23, 2015, Defendant Conyers hired Plaintiff as Scheduler for the congressional office located in the U.S. House of Representatives in District of Columbia. Due to Defendant Conyers' age and failing mental capacities, Plaintiff was directed by the outgoing Scheduler, in addition to the core responsibilities and duties, to perform the following: knowing Defendant Conyers' whereabouts at all times; ordering and maintaining meds for Congressman Conyers; waking him up every morning by phone when he resides in DC; checking with and often providing him his meds daily while in the DC offices, including weekends; and handling flight arrangements for his wife and children and campaign related activities as directed. Plaintiff was also directed to remain in the office and not leave until after Defendant Conyers had departed for the day so Plaintiff maintained this pattern as part of her duties and responsibilities.

12. Also in July 2015, Defendant Conyers' wife, Monica Ann Conyers, complained to other staff about this hiring and made the statement, "what's good about him hiring his whore".

13. In September 2015, Defendant Conyers' wife, Monica Ann Conyers filed for divorce claiming "irreconcilable differences" citing the hiring of the Plaintiff as partial cause for this action. Defendant Conyers' wife, Monica Ann Conyers, was intermittently pleasant and hostile over the tenure of Plaintiff's employment with Defendant Conyers.

In December 2015, Plaintiff first began to take note of random comments and lingering touches by Defendant Conyers. In the twenty years the Plaintiff has known Defendant Conyers, Defendant Conyers had never displayed this behavior toward the Plaintiff and because these occurrences were so unusual, Plaintiff decided to initially dismiss these actions as innocuous.

Subject to Motion Under Seal

Plaintiff began to give these behaviors more weight as these touches began to occur more and more often and Defendant Conyers began blowing kisses at Plaintiff when others' backs were turned.

14. In January 2016, the advances made by Defendant Conyers continued to increase so the Plaintiff reported these behaviors to then Chief of Staff who found it incredulous but did not direct the Plaintiff to do anything at that time.

15. On February 4, 2016, Plaintiff extemporaneously shared these advances with a former Conyers' staffer (MW) over lunch to which the staffer replied, well "You are his type...we've always had the same type".

16. Also in February 2016, the Plaintiff entered Defendant Conyers' office in a sleeveless blouse without her suit top to inquire if the Congressman was ready to be briefed to which he replied "yes".  When the Plaintiff returned wearing her suit jacket to commence the briefing, Defendant Conyers stated "oh you're dressed now".  From that moment forward, Plaintiff would not enter Defendant Conyers' office without a suit jacket nor would Plaintiff wear sleeveless tops when the Congressman was scheduled to be in the DC office.

17. Plaintiff again complained to the Chief of Staff about the advances from Defendant Conyers who then directed Plaintiff to start writing them down.  These advances occurred every occasion Defendant Conyers was in in the Washington, DC offices and were so numerous and occurred so frequently that the Plaintiff was unable to maintain this list due the extreme amount of time it would require to adequately chronicle these advances and behaviors and manage her work load.

18. Because of Plaintiff's fatherly affection for the Defendant Conyers and extreme admiration and respect for his legislative work as a Civil Rights icon, Plaintiff was extremely uncomfortable addressing this inappropriate behavior with Defendant Conyers nor did Plaintiff

Subject to Motion Under Seal

wish to embarrass or disparage Defendant Conyers by sharing her concerns with other members of the office staff. Instead, and in an effort to stem the harassment Plaintiff was receiving from Defendant Conyers, in March 2016, Plaintiff asked a male Hill staffer (GP) she'd earlier dated to be her "fake boyfriend" and to make regular stops by the office hoping that if Defendant Conyers believed she was in a relationship, he would stop making advances towards her.

19. Also in March 2016, the then Chief of Staff was put on administrative leave causing Plaintiff to be the only female staff in the DC office. At that time, there was no supervisory or managerial staff in the DC office other than Defendant Conyers.

20. With no formal management or supervisor in the DC office, Defendant Conyers became more and more aggressive and continued to behave inappropriately towards the Plaintiff throughout the day by repeatedly coming to her desk, rubbing on her shoulders, kissing her forehead, making inappropriate comments, covering and attempting to hold her hand.

21. The Plaintiff experienced very high levels of stress when in the presence of Defendant Conyers because she feared he would make additional comments and sexual advances towards her. Plaintiff attempted to minimize interaction with him and would make extra efforts to never be alone in the office, often making sure one of the male staffers remained behind if Defendant Conyers was still in the office.

22. In April 2016, due to the ongoing persistent nature of Defendant Conyers' actions, Plaintiff considered resigning her position of Schedule but instead contacted the Office of Compliance (OOC) to obtain counseling. On April 20, 2016, the OOC scheduled informal counseling with the Plaintiff for April 25, 2016. Plaintiff requested formal counseling from the OOC on April 26, 2016.

Subject to Motion Under Seal

23. On April 29, 2016 Defendant Conyers was even more persistent than usual towards the Plaintiff and made a minimum of five (5) direct attempts to use his position as a Member of Congress and Plaintiff's employer to coerce the Plaintiff to come to his house:

    a.  Instance 1:

        As part of her duties as Scheduler, Plaintiff would call to wake up Defendant Conyers' every morning he was in town when Congress was in session.  On Friday, April 29th, Defendant Conyers stated he "missed" Plaintiff and asked for her phone number.  Defendant Conyers then called Plaintiff back at home and asked Plaintiff to come to his house after the morning votes, "please put that in your schedule for today" (both statements were overheard by former staffer RS).

    b.  Instance 2:

        Upon arriving to the office, Defendant Conyers cornered Plaintiff in the kitchen and asked if Plaintiff remembered his request from earlier that morning about coming to his house.  Plaintiff acknowledged that she did and stated that she would have to think about it to which he replied, "oh its nothing to think about just say yes" or something to that effect.

    c.  Instance 3:

        Defendant Conyers later came to Plaintiff's desk on three different occasions:

          i.  Approximately an hour later, Defendant Conyers entered Plaintiff's desk area and began touching on her.

          ii.  Approximately, two hours later, Defendant Conyers returned to Plaintiff's desk and continued to touch Plaintiff and comment inappropriately.

Subject to Motion Under Seal

iii. Approximately one hour later, Defendant Conyers returned to Plaintiff's desk and requested she participate in a meeting in his office. Defendant Conyers then asked Plaintiff to remain behind after it was over and requested Plaintiff attend the White House event with him that evening. Due to a camera phone on Plaintiff's desk, Plaintiff was able to catch some of these events on tape.

d. Instance 4:

Very shortly after the aforementioned meeting, Defendant Conyers decided he needed to return home before the 5p White House event and asked the Plaintiff to drive him home despite the fact that she never performs these duties and other male staff were available and willing to do the same (witnessed by two male staffers – PA and DH). Momentarily after this request, Defendant Conyers' initial guest for the evening called and cancelled so he changed his mind about returning home. Plaintiff was overcome with relief that she would not have to be alone with him in either the car or have to take him home.

e. Instance 5:

Once Plaintiff advised Defendant Conyers there was a possibility, she and another staffer could attend the White House event with him, he returned to Plaintiff's cubicle and because someone had earlier walked up while he was rubbing Plaintiff's neck, he then walked around all of the cubicles to see if anyone else was at their desk. Upon returning to Plaintiff's cubicle, Defendant Conyers beckoned Plaintiff into the vacant office of the former COS where he once again asked Plaintiff to come to his house after the White House event that evening.

Subject to Motion Under Seal

During the ride to the White House event, Plaintiff ended up riding in the rear seat with Defendant Conyers and continually made attempts to hold her hand and make inappropriate comments under his breath, again requesting that Plaintiff come home with him. Once at the at the White House event, Plaintiff was seated next to Defendant Conyers' who continued to touch her against her wishes the entire evening.

24. On May 4, 2016, Defendant Conyers' wife, Monica Ann Conyers, called the office and after a brief conversation about scheduling, proceeded to accuse Plaintiff of desiring a relationship with her husband, curse and threaten the Plaintiff with getting her fired, just as she had gotten the previous Chief of Staff fired. Because there was no supervisor or Manager in the office at that time, Plaintiff chronicled the exchange in an email to the Judiciary Chief of Staff. Intern Keller transferred the call and heard the exchange. Plaintiff also shared this incident with her counselor at the OOC.

25. From May 2016 until July 2016, Defendant Conyers continued to, repeatedly and daily, harass both physically and emotionally and inappropriately touch the Plaintiff by rubbing on her shoulders, kissing her forehead, covering and attempting to hold her hand, suggesting that she come Detroit causing the Plaintiff severe anxiety and chest pains. Because she feared Defendant Conyers' further advances if they were alone, the Plaintiff endured severe stress, chest pains and other medical issues so much so that she contacted a physician to obtain aid to help with her anxiety due to Defendant Conyers' unwelcome advances.

26. Also during this period and after consultation with her physician, Plaintiff made the decision to go out on FMLA to deal with the stress and anxiety of the Conyers' office.

27. On July 11, 2016 Plaintiff was out of the office on a personal matter that morning but planned to speak with Chief of Staff Ray Plowden on her return both to discuss taking FMLA

leave and the pending OOC request for mediation but when Plaintiff returned to the office, all

the DC staff except one were in a meeting with Defendant Plowden.  Plaintiff had to finalize the

week's schedule and have the scheduling meeting that afternoon and COS Plowden was busy

with meetings and phone calls.  Therefore, the office was too busy with other matters so Plaintiff

decided to postpone the meeting with Defendant Plowden until July 12, 2016.

28. Also on July 11, 2016, Plaintiff asked colleague Dan Riffle, another staff member in

Conyers' DC office to email her a document from her personal flash drive that she left in the

office. Mr. Riffle complied but unbeknownst to Plaintiff, while in Plaintiff's personal flash drive,

saw personal documents[1] belonging to the Plaintiff and provided a copy of these documents to

Defendant Plowden. Not knowing that Mr. Riffle had supplied the aforementioned document(s),

Plaintiff later asked Defendant Plowden if the meeting held earlier with the male staff was the

weekly scheduling meeting she was preparing for.  Defendant Plowden then lied and stated they

were discussing the legislative agenda.  As one of the legislative staffers was absent, it is

Plaintiff's belief that they were discussing Plaintiff and the documents provided to Defendant

Plowden by Mr. Riffle.  Plaintiff does not know the extent of the documents provided to

Defendant Plowden but a resignation letter and a request for FMLA have subsequently been

referenced by both Defendant Plowden and House Employment Counsel.

29. On July 12, 2016, Defendant Plowden summoned Plaintiff to his office, and with

Defendant District Director Lipsey on the line confronted Plaintiff about the documents from her

flash drive, in particular a resignation letter and a request for FMLA. Plaintiff requested to speak

privately with Defendant Plowden and once that request was granted, Plaintiff and Defendant

Plowden discussed the materials provided to him by staffer Dan Riffle.

---

[1] This document included a resignation letter Plaintiff drafted when she originally considered
resigning

- 10 -

Subject to Motion Under Seal

30. Before Plaintiff could respond, Defendant Plowden expressed his shock and disappointment that Plaintiff was considering resigning. Defendant Plowden went on to share that everyone in Detroit asks about Plaintiff and wanted to know how Plaintiff "is doing", including his wife. Defendant Plowden went on to express how impressed he had been with Plaintiff's work performance; how much he has appreciated her assistance; how he has personally benefitted from Plaintiff's job knowledge, how it has assisted in his own transition to Chief of Staff and in his learning the job. Plaintiff shared that she had reconsidered resigning and had planned to discuss her need to go out on FMLA and the OOC complaint with him the day before but that there just hadn't been enough time. Plaintiff went on to share her concerns about the hostile work environment created by both Defendant Conyers and Defendant Conyers' wife, Monica Ann Conyers, in particular, the fact that Monica Conyers is a known brawler and that she felt threatened anytime Mrs. Conyers was scheduled to be in Washington, DC. Plaintiff referred to the situation as a "time bomb waiting to happen" and Defendant Plowden concurred. In the same conversation, Defendant Plowden also voluntarily shared that Mrs. Conyers was looking for employment in the District of Columbia region and if she was successful, that the office should sever Plaintiff's employment at the end of her FMLA.

31. Over July 12, 2016 and July 13, 2016, Plaintiff met repeatedly with Defendant Plowden to further discuss details about Plaintiff taking leave under the FMLA, including why Plaintiff would need to access FMLA, potential start dates for the FMLA during which Defendant Plowden and that there is a provision in the Office/Personnel policy that would allow Plaintiff to access sick leave for the entire duration of Plaintiff's absence. Defendant Plowden also shared and impressed upon Plaintiff that she should let him know if she felt in any way retaliated against for her sexual harassment/hostile work environment complaint.

32. On July 27, 2016, Plaintiff submitted via email a medical leave of absence to Defendant Plowden for the dates August 1, 2016 to November 30, 2016.

33. Despite lauding Plaintiff repeatedly in the days leading up to Plaintiff's request for time off, on July, 28, 2016, Defendant Plowden replied via email with a provisional approval of her FMLA request along with several documents attached:

a) Certification of Health Care Provider;

b) FMLA Notice of Eligibility (Revised Feb 2012);

c) Scheduler Job Description;

d) Confidentiality Policy, which was later corrected to the Office Personnel Policy.

The email also contained several false statements identified below:

e) Plaintiff was planning to resign;

f) "believe that staff will not give you a fair shake";

g) That Plaintiff was "having financial issues";

but strikingly failed to mention other items discussed including:

h) Defendant Plowden's accolades concerning Plaintiff's work performance;

i) Defendant Conyers' inappropriate, harassing behavior;

j) the belligerent behavior of Defendant Conyers' wife, Mrs. Conyers;

k) Defendant Plowden's suggestion that the office severs Plaintiff's employment if in fact, Defendant Conyers' wife Monica Conyers relocates to the Washington, DC area;

l) that House Employment Counsel had identified a line in the personnel policies that would allow Plaintiff to be paid for sick leave for the entire duration of her leave despite whether the leave balance was available or accrued; and

m) that Plaintiff was considering FMLA for either Plaintiff's Father or personally for

herself.

Plaintiff replied to defendant Plowden's email by stating that Plaintiff had not planned to resign;

had a fabulous working relationship with her colleagues both in DC and Detroit and felt

confident that staff would support her assertion and was not having financial difficulties.  Also,

Plaintiff first received the job description for her positon "Scheduler" on July 28, 2016 in reply

to her FMLA request submitted on July 27, 2016.

34. Despite Plaintiff's replying to, clarifying and re-stating the actual occurrences to

Defendant Plowden, in an email on August 5, 2016 from Defendant Plowden, in direct

contradiction to the conversation in his office, he continued to misrepresent his conversation with

Plaintiff, continued to assert misinformation concerning Plaintiff's request for leave and events

in the office as well as continued to inaccurately interpret the personal policy and the leave due

to Plaintiff.

## VI. CAUSES OF ACTION
### Count 1 – Sexual Harassment

35. Plaintiff incorporates by reference all the preceding paragraphs as fully set forth

herein.

36. The Congressional Accountability Act ("CAA") prohibits discrimination against an

employee on the basis of sex in the enjoyment of all benefits, privileges, terms, and conditions of

employment.

37. At all times relevant to this Complaint, Plaintiff, was an employee of the United

States House of Representatives in the DC Office of Defendant Congressman John Conyers and

was an "employee" within the meaning of the CAA.

38. Defendant Conyers regularly subjected Plaintiff to unwelcome touching and sexual advances. The actions of Defendant Conyers towards Plaintiff, his employee as described herein, constitutes sexual harassment in violation of House Rule 23 and the Congressional Accountability Act clauses 2 U.S.C. § 1311 (a).

## Count 2 – Hostile Work Environment

39. Plaintiff incorporates by reference all the preceding paragraphs as fully set forth herein

40. Defendant Conyers never stopped making sexual advances towards or touching Plaintiff.

41. Defendant Conyers repeatedly and persistently made unwanted, suggestive, sexual advances and thereby created a sexually hostile work environment, in violation of the CAA.

42. Defendant Conyers' sexual conduct towards the Plaintiff were so severe and pervasive that they altered the conditions of Plaintiff's employment and created a sexually hostile work environment.

43. By allowing his wife, Monica Ann Conyers to be verbally abusive and threatening towards Plaintiff, Defendant Conyers created a hostile work environment. Defendant Conyers did not subject male employees to the same work environment and his actions towards Plaintiff, his employee as described herein, materially altered Plaintiff's working conditions and created a hostile sexual and other work environment in violation of House Rule 23 and the Congressional Accountability Act clauses 2 U.S.C. § 1311 (a).

## Count 3 – Retaliation and Wrongful Termination/Constructive Discharge

44. Plaintiff incorporates by reference all the preceding paragraphs as fully set forth herein.

45. The CAA prohibits retaliation against any employee for engaging in opposition to what she reasonably in good faith believes constitutes unlawful discrimination under the CAA, including the rejection of sexual advances and other forms of sexual harassment.

46. Defendant Plowden took adverse retaliatory actions against Plaintiff by lying about the extent and content of discussions with Plaintiff and creating a dishonest work atmosphere hindering Plaintiff's ability to trust her employer.  These actions this atmosphere of mistrust caused Plaintiff to not provide the office with her medical certification in support of her FMLA request.

47. Defendant Plowden and Lipsey took adverse retaliatory actions against Plaintiff by misrepresenting Plaintiff's true intentions and asserting false reasons for both Plaintiff's FMLA request and the filing of a formal complaint with the OOC.

48. When Plaintiff requested Defendant Plowden further clarify the office policies, Defendant Lipsey erroneously and falsely shared the office annual and sick leave policy with Defendant Plowden. Defendants Plowden and Lipsey took adverse retaliatory actions against Plaintiff by refusing to honor the existing office policy of allowing full use of leave at the beginning of the calendar year and instead insisted that the office used an accrual system which was false and by failing to grant Plaintiff the rightful amount of sick and annual leave to which she was entitled based on her length of service in retaliation for Plaintiff's complaint against Defendant Conyers.

49. Upon the urging of Defendant Conyers' wife, Monica Ann Conyers and Defendants Plowden and Lipsey then recommended to Defendant Conyers that Plaintiff be terminated when the Plaintiff did not provide her medical certification in support of her Family Medical Leave Act leave request.

Subject to Motion Under Seal

50. Defendant Conyers then, relying upon the representations of Defendants Plowden and Lipsey, terminated Plaintiff's employment despite Plaintiff being out on federally mandated medical leave causing Plaintiff significant economic, emotional and professional harm.

51. The termination of Plaintiff's employment by Defendants constitutes discrimination based on sex and violated House Rule 23 and the Congressional Accountability Act clauses 2 U.S.C. § 1311 (a).

### Count 4 – Reckless Infliction of Emotional Distress

52. Plaintiff incorporates by reference all the preceding paragraphs as fully set forth herein.

53. As a direct and proximate result of the unlawful sexual harassment, the hostile work environment, retaliation and wrongful termination, the Plaintiff experienced insomnia, anxiety, depression, and chest pains. The Plaintiff has been prescribed medication and is under the care of a physician because of the severity of her health problems.

54. Defendant Conyers then terminated Plaintiff's employment while on medical leave causing her increased anxiety and stress as well as significant economic and emotional harm.

55. Defendant's actions have directly and proximately caused the Plaintiff substantial humiliation, and pain and suffering. Defendant's actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights.

56. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

57. As a further direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to the Plaintiff's damage in an amount to be proven at time of trial.

Subject to Motion Under Seal

58. This has affected Plaintiff emotionally and potentially physically and as a result of the Defendants' actions above, Plaintiff is thereby damaged.

59. As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff has suffered economic damages including back pay, front pay, equity, benefits and other compensation.

60. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at the time of trial.

## VII. PRAYER FOR RELIEF

61. Plaintiff seeks declaratory and equitable relief and monetary damages for injuries sustained as a result of Defendant Conyers sexual harassment of her and the subsequent retaliation against her for complaining and requests all appropriate relief as the Court deems appropriate including:

    a) Payout of 15 days of annual leave previously unpaid;

    b) Retroactively grant paid sick leave for the period of August 1, 2016 – November 30, 2016;

    c) Damages in the sum of $34,500 for lost wages and $5,500 lost benefits;

    d) Damages in the sum of $15,000.00 for mental anguish and emotional distress;

    e) Defendant Conyers is a habitual, repeated offender and thus Plaintiff requests punitive damages in the amount of $50,000;

    f) Reasonable legal fees and costs, and

    g) Such other relief as the Court deems proper.

Subject to Motion Under Seal

1

62. Plaintiff begs court to find in favor of the Plaintiff.

2

### VIII. PRAYER FOR RELIEF

3

63. Plaintiff demands a jury trial on all claims so triable.

4

5

6

Respectfully submitted,

7

8

9

10

Dated: February 28, 2017

Maria D. Reddick
4012 14th St NW
Washington, DC 20011
Telephone: (202) 497-2611
*Plaintiff, Pro Se*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28